IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ALLORY SMITH, K84523, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| HEATHER McGEE, | ) |
| LEAH GRACIN, | )   Case No. 18-cv-1517-DWD |
| M. THOMPSON, | ) |
| NURSE NAYPER, | ) |
| NURSE SHRIP, | ) |
| KIM BUTLER, | ) |
| WARDEN OF MENARD,[1] | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Allory Smith, a former inmate of the Illinois Department of Corrections (IDOC) now on parole[2], brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights while at Menard Correctional Center (Menard). Plaintiff alleges the defendants were deliberately indifferent to serious medical needs because they failed to administer his prescribed Risperdal doses from June 29, 2016, through July 6, 2016, while he was on a court writ at Menard from Pontiac Correctional Center. The Defendants' filed a timely Motion for Summary Judgment (Doc. 48), Plaintiff

---

[1] As clarified in the Memorandum in Support of the Motion for Summary Judgment, Heather McGee is Heather McGhee, Nurse Nayper is Karen Niepert, and Kim Butler is Kimberly Butler. (Doc. 71). As clarified in the executed waivers of service, Leah Gracin is Lee Gregson, and Nurse Shrip is Brandy Tripp. (Doc. 16). The Clerk of Court is **DIRECTED** to update the docket sheet to reflect these clarifications.
[2] According to the IDOC Inmate Locator, Plaintiff was released on parole on March 10, 2022. *See* https://www2.illinois.gov/idoc/Offender/Pages/InmateSearch.aspx. (Search for inmate number K84523, last accessed September 14, 2022).

responded (Doc. 50), and the Defendants' replied (Doc. 52).  The matter is now ripe for review.

## PROCEDURAL HISTORY

Plaintiff initiated this case by filing a complaint on August 20, 2018.  (Doc. 1).  Upon initial review, the Court identified two valid claims:

> Claim 1:   Eighth Amendment claim against Nurses McGee, Gracin, Nayper, Thompson, and Shrip ("Menard Nurses") for denying or delaying Plaintiff's access to medication and/or mental health treatment at Menard between June 29 and July 9, 2016[3]; and,
>
> Claim 2:   Eighth Amendment claim against Warden Butler for disregarding or denying Plaintiff's grievances regarding the denial of psychotropic medication and/or mental health treatment between June 29, and July 9, 2016.

(Doc. 6 at 3).  Other claims and parties were dismissed.  (*Id.*).  Service of process was initiated on the identified parties.  The Warden of Menard was served for the sole purpose of effectuating any injunctive relief.

Waivers of service were returned executed for Defendants McGhee, Niepert, and Butler, and an answer was filed collectively on behalf of these parties (and the Warden of Menard) on November 19, 2018.  (Docs. 15, 19).  By contrast, a wavier was returned executed as to Defendant Gracin[4] on September 22, 2018, and by Defendant Shrip[5] on September 27, 2019, but neither of these defendants ever filed an answer.  (Doc. 16).  A

---

[3] The July 9, 2016, designation in the Court's initial review appears to have been erroneous.  The parties agree that Plaintiff left Menard on July 6, 2016.
[4] The executed waiver served on Defendant "Gracin" was signed by Lee Gregson.  (Doc. 16).
[5] The executed waiver served on Defendant "Shrip" was signed by Brandy Tripp.  (Doc. 16).

waiver was never successfully executed on Defendant Thompson, but a summons was returned as executed on February 26, 2019. (Doc. 29). Thompson never filed an answer.

On October 3, 2019, the Court granted Plaintiff's second motion for appointment of counsel, and Attorney Jason Bartell was assigned to represent Plaintiff. (Doc. 41). In August of 2020, December of 2020, June of 2021, and August of 2021, the parties received extensions of the pending discovery and dispositive motion deadlines. (Docs. 55, 59, 62, 64). Finally, on September 2, 2021, the three defendants who had appeared and answered—Defendants McGhee, Niepert, and Butler—filed a Motion for Summary Judgment. (Doc. 65). On October 7, 2021, Defendants sought and received an extension of time to file an Amended Motion for Summary Judgment. On October 15, 2021, the Defendants filed an Amended Motion, which was just an Amended Memorandum (Doc. 71) in support of their prior Motion for Summary Judgment (Doc. 65). On December 13, 2021, Plaintiff's counsel filed a response (Doc. 72), and on January 26, 2022, Defendants filed a reply (Docs. 76, 77).

## FACTS

On June 29, 2016, Plaintiff was transferred from Pontiac to Menard for a court writ. Upon arrival at Menard, Plaintiff informed medical staff that he had taken psychotropic medications in the past, and that he currently took medications. Plaintiff claims that he verbally informed Defendants McGhee, Niepert, Thompson, Gregson, and Tripp of his need for medications during morning and evening medical rounds throughout his stay at Menard. The Defendants informed him that his parent institution (Pontiac) was responsible for sending his medications and records when he went on a court writ, and

that without the records they could not provide him with any medications. Plaintiff also claims that he submitted four emergency grievances seeking his medication, but that Defendant Butler did not respond to any of the grievances. The parties agree that there is no formal record of these grievances being submitted at Menard. The parties agree that, at minimum, the grievances were mailed to the Administrative Review Board (ARB) in late July of 2016. Plaintiff alleges that as a result of his lack of medication, his mental condition deteriorated, and he suffered from anxiety, vomiting, massive headaches, and stress.

In support of the Motion for Summary Judgment, the Defendants submitted random medical records and charts, Plaintiff's deposition (Doc. 71-5), Defendant Butler's responses to Plaintiff's Interrogatories (Doc. 71-6), emails exchanged between the Illinois Attorney General's Office and IDOC officials concerning this case, and various grievance and disciplinary records.[6] In response, Plaintiff submitted a copy of grievances, and a copy of a settlement agreement from another case concerning the general care provided in the IDOC. (Docs. 72-1-72-3). In reply, Defendants submitted additional grievance documentation. (Doc. 77).

Of note, at his deposition, Plaintiff testified that upon arrival at Menard he spoke to a mental health professional, he informed her of his need for medications, and he also

---

[6] The Court notes that many of the attached grievances and disciplinary documents are totally irrelevant to the claims in this case. Take for example the inclusion of a disciplinary report from May 1, 2018, (Doc. 71-9 at 2-3), or a disciplinary report and emails about contraband in the form of homemade alcohol (Doc. 71-7 at 25, 28). The inclusion of irrelevant documents can cause a waste of judicial resources because the Court carefully reviews documents submitted at the summary judgment phase. Counsel should avoid the inclusion of unnecessary documents in the future.

had a psychological evaluation and informed the evaluator of his need for medications. (Doc. 71-5 at 32:1-12).  Plaintiff testified that he never received his medications the first day at Menard.  (Doc. 71-5 at 32:14-17).  Plaintiff testified that for the first four days of his writ at Menard, he would talk to the nurses who made medication rounds in the morning and evening and after rounds were completed, he would write and submit an emergency grievance about who he talked to, what they said, and the outcome.  (*Id*. 61:10-25).  He submitted the grievances to the Butler, but he never got a response.  (*Id*.)

One of the nurses he spoke to was Defendant Niepert.  He alleges that Niepert knew him well from his previous years at Menard, but that she declined him assistance because there was no note in his file about medications.  (*Id*. at 63-65).  Another nurse he spoke to was Gregson, who was also familiar with him, and who similarly noted that his file did not list any medications.  (*Id*. at 67-68:12-15).  Plaintiff testified that he saw Defendant McGhee probably three times during his writ to Menard, and she also told him that because his medical file did not reflect medication, she could not give him anything.  (*Id*. at 52:16-22; 88-89).  Plaintiff also testified that on July 5, 2016, he spoke to a mental health counselor, who acknowledged his status as an "SMI inmate," and noted that he should be provided with is medication.  (*Id*. at 40:20-23).  The counselor (Melissa Pappas) apparently wrote in her notes that Plaintiff reported he was doing bad and had not had his medication since he arrived at Menard.[7]  (*Id*. at 39).

---

[7] Neither party included these notes, though at the deposition Plaintiff examined the document and was asked about it.  (Doc. 71-5 at 38:19-25; 39:1-19).

Without his medication, Plaintiff testified that he was having self-harm thoughts after three or four days, though he never harmed himself. (*Id*. at 50:17-21). He also stated that he could not eat or sleep, and when he tried to eat, he would vomit. He reported "I was having thoughts of wanting to lash out, me hurt other people." (*Id*. at 57:19-24). Additionally, he reported headaches, anxiety, and stress. (*Id*. 95:23-96:1).

A one-page mental health progress note dated August 1, 2016, indicates that Plaintiff is designated as "SMI" or seriously mentally ill due to his primary diagnosis of unspecified bipolar and related disorder. (Doc. 71-1 at 1). He can experience impaired mood and thinking, paranoia, hallucinations, delusions, and suicidal ideation. (*Id*.). The only other 'medical records' submitted on summary judgment are medication administration charts from Pontiac. (Doc. 71-2 at 1-8).

In response to the interrogatories, Defendant Butler indicated that if an offender was not receiving his medication, he could complain to a medical provider or file a grievance, and that if he filed an emergency grievance, she or her designee would review the emergency grievance. If she reviewed an emergency grievance about a lack of medication, she would have forwarded the issue to the medical director. (doc. 71-6 at 1-2).

The Defendants included copies of Plaintiff's purported July 1, 2016, and July 2, 2016, grievances wherein he complained that he was not receiving his medications at Menard. (Doc. 71-1 at 33-36), as well as a July 10, 2016, letter he sent to the ARB about the same issue (Doc. 71-7 at 37). They also included an August 23, 2016, grievance that he filed detailing his entire stay at Menard. In the grievance he mentions that on July 3,

2016, during evening rounds he informed Defendant Thompson of his need for medication. (Doc. 71-7 at 39).

An October 21, 2016, letter from the Administrative Review Board to Plaintiff indicated that the ARB reviewed and processed his grievances from July 1, 2, and August 23, 2016. (Doc. 71-7). During the review of the grievances, the ARB learned from the Chief of Mental Health that there was no record of Plaintiff receiving medication at Menard during his court writ. The ARB affirmed Plaintiff's grievance and directed Warden Melvin to instruct his staff to ensure that proper protocols are followed when a Plaintiff is transferred from one facility to another on court writ to ensure health records are transferred.

The grievances submitted by Plaintiff in his response, and the grievances submitted by Defendants with their reply are duplicative of those submitted by Defendants in support of their motion.

## CONCLUSIONS OF LAW

A. Legal Standards

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In determining a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is

not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted).

"A prison official violates the Eighth Amendment by acting with subjective 'deliberate indifference' to an inmate's 'objectively serious' medical condition." *Reck v. Wexford Health Sources, Inc.*, 27 F.4th 473, 483 (7th Cir. 2022). The first consideration is whether the prisoner has an "objectively serious medical condition." *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011); *accord*, *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). A medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson. *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). It is not necessary for such a medical condition to "be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010); *accord*, *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (violating the Eighth Amendment requires "deliberate indifference to a substantial risk of serious harm") (internal quotation marks omitted) (emphasis added).

The second consideration is whether Plaintiff can establish that a defendant was deliberately indifferent to the serious medical condition. Prevailing on the subjective prong requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health. *See Greeno*, 414 F.3d at 653. The plaintiff need not show the individual "literally ignored" his complaint, but that the individual was aware of the condition and either knowingly or recklessly disregarded it. *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). "This is a high bar 'because it requires a

showing [of] something approaching a total unconcern for the prisoner's welfare in the face of a serious risk.'" *Brown v. Osmundson*, 38 F.4th 545, 550 (7th Cir. 2022) *citing Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022). "Something more than negligence or even malpractice is required" to prove deliberate indifference. *Pyles*, 771 F.3d at 409. Deliberate indifference involves "intentional or reckless conduct, not mere negligence." *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) (*citing Gayton,* 593 F.3d at 620).

An injury need not have been specifically diagnosed to have demanded action by a medical professional. *Conley v. Birch*, 796 F.3d 742, 747 (7th Cir. 2015). "[W]hen a doctor is aware of the need to undertake a specific task and fails to do so, the case for deliberate indifference is particularly strong." *Reck*, 27 F.4th at 483, *citing Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020). "An official may not escape liability by 'refusing to verify underlying facts that she strongly suspects to be true.'" *Id.* "A nurse confronted with an 'inappropriate or questionable practice' should not simply defer to that practice, but rather has a professional obligation to the patient to 'take appropriate action,' whether by discussing the nurse's concerns with the treating physician or by contacting a responsible administrator or higher authority." *Berry*, 604 F.3d at 443. A nurse's deference to physicians may not be "blind or unthinking." *Reck*, 27 F.4th at 485. "Under some circumstances when a nurse is aware of an inmate's pain and the ineffectiveness of the medications, a delay in advising the attending physician or in initiated treatment may support a claim of deliberate indifference." *Id.*

A plaintiff must provide evidence, either direct or circumstantial to prove deliberate indifference. *Brown*, 38 F.4th 550. Direct evidence is rare because prison

officials do not typically proclaim that they violated the Constitution. Circumstantial evidence may include evidence of the denial of medical treatment, delayed treatment, continued ineffective treatment, a substantial departure from medical norms, ignorance to an obvious risk, or the refusal of care based on cost. *Id.* To demonstrate that delay caused a cognizable injury, an inmate must show that the delay either exacerbated his injury *or* that it unnecessarily prolonged the pain. *Thomas v. Martija*, 991 F.3d 763, 771 (7th Cir. 2021). In cases where prison officials delayed rather than denied treatment, the plaintiff must offer verifying medical evidence that the delay (rather than the underlying condition) caused some degree of harm. *Conley*, 796 F.3d at 749, *citing Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013).

    B. Analysis

The Defendants argue that summary judgment should be granted in their favor because Plaintiff did not suffer from a serious medical condition, and their actions did not amount to deliberate indifference to a serious need. (Doc. 71). Specifically, they argue that the deprivation of medication for seven days does not constitute a serious medical need, and the Plaintiff has not supplied medical evidence that shows that he suffered anything more than negligible and fleeting side effects.

As to subjective intent, Defendants Niepert and McGhee argue that they did not have actual knowledge of any potential harm because they did not have Plaintiff's current medical records, any familiarity with him from his prior time at Menard was not enough to impute knowledge of his current prescriptions, and as nurses they could not provide

him with medications without a prescription because that would exceed their medical licenses. Defendant Butler argues that Plaintiff has not established a subjective intent on her behalf because he has no proof that she received any of his emergency grievances, so it can not be shown that she personally facilitated, approved, condoned, or turned a blind eye to his condition.

All three defendants argue that they are entitled to qualified immunity because Plaintiff did not have a serious medical need and their conduct did not violate clearly established law. Defendants also argue that because Plaintiff did not suffer any notable physical injury, he is barred from seeking compensatory damages. Finally, the Defendants argue that the Warden of Menard is entitled to summary judgment because Plaintiff does not reside at Menard, so any injunctive relief related to that facility is moot.

In response Plaintiff argues that his medical need was serious because he was designated as "SMI," meaning he had a serious mental illness. Plaintiff further argues that his symptoms of vomiting, thoughts of self-harm, anxiety, headaches, and other symptoms should be considered evidence of the seriousness of his condition and the impact of the denial of his medication, especially in light of his designation as SMI. As to Defendants' subjective state of mind, Plaintiff argues that there is at least a genuine dispute of material fact as to whether the Defendants knew about his serious medical need, and whether their actions were insufficient in response to his need. He argues that the Defendants are not entitled to qualified immunity because there are genuine questions of material fact about their actions, which relate to the clearly established right to adequate medical care. As to damages, Plaintiff submits that he is entitled to

compensatory damages for the variety of physical ailments that he experienced as a result of not having his medication for a week. Finally, he contends that his request for injunctive relief is not moot because it should be interpreted to apply more broadly to IDOC as a whole, consistent with recent litigation in other federal courts concerning the state of the medical care provided in IDOC facilities.

In reply, the Defendants reiterate that they believe the condition to be considered is really the outcome of the deprivation of medication, rather than the existence of the underlying condition of a serious mental illness. The Defendants also argue that Plaintiff failed to supply verifying medical evidence of the conditions he self-reported, so they argue that he can not establish that the denial of his medication caused harm. Concerning subjective intent, the Defendants argue that Plaintiff's grievances show that they were received by the ARB, but not that Butler or other defendants were aware of his requests for care. They further argue that at best, the grievances show negligence rather than deliberate indifference.

First, the Court must assess the seriousness of Plaintiff's medical condition. There is no dispute that a designation as seriously mentally ill indicates a serious medical condition. Rather, the Defendants argue that the consideration in this case is more nuanced because Plaintiff complains of the fallout from a seven-day lack of his medication, rather than complaining of an overarching issue with his mental illness. The Defendants make much of the Seventh Circuit's discussion in *Jackson v. Pollion*, where the Seventh Circuit chastised a judge for assuming that an inmate with hypertension had a serious medical condition, rather than assessing the specific issue at hand—the side

effects caused by a three-week delay in his prescription medication for high blood pressure. 733 F.3d 786 (7th Cir. 2013). The entire discussion in *Jackson v. Pollion* about the difference between an underlying serious condition and the impacts of a short-term deprivation of a treatment for that condition is dicta. The *Jackson* Court opened by stating that the judge's grant of summary judgment in the case was "so clearly correct as to not require elaboration." *Id.* at 787. The *Jackson* Court then went on to discuss the hesitance of the entire legal profession to delve into nuanced medical issues, and it offered a detailed analysis of the non-severe impacts of a three-week lapse in blood pressure medication on the plaintiff in that case. Although this Court appreciates the points made in *Jackson*—that medical claims should be closely examined and best efforts should be made to understand the technical implications of various treatment modalities and decisions—it does not find that the present case is on point with the concerns and rationale raised in *Jackson*.

The *Jackson* plaintiff suffered a slightly elevated blood pressure during a three-week deprivation of his medications, but the Court noted with citations to research that mildly elevated blood pressure for a short time does not cause risk of a stroke, or heart attack in the short- or long-term. The *Jackson* Court emphasized that the District Court should have taken more time to learn about the impacts of blood pressure before deeming the condition serious and proceeding to an analysis of subjective intent. Unlike the *Jackson* plaintiff who suffered only a slightly elevated blood pressure over the span of three weeks, Plaintiff in this case testified at his deposition that within four days of being without his medications he was having visions of self-harm and of harming others, and

he had a host of other physical symptoms. In recent years, courts and the general public have increasingly recognized the importance of mental health and of adequate treatment. Thoughts of self-harm, or of harm to others, are serious and should not be taken lightly. These symptoms are unlike a few days or weeks of slightly elevated blood pressure. The Defendants do not offer any medical evidence to support their position that the Plaintiff's condition during the week of missed doses was not serious. In fact, Defendants tendered hardly any medical records in support of their motion for summary judgment. In contrast to Plaintiff's own deposition testimony that he was not doing well and that he suffered greatly during the one-week period,[8] the Court cannot confidently say that there is no genuine dispute of material fact about the existence of a serious medical condition.

The Court also notes that there is at least a genuine dispute about the subjective intent of the defendants. As to Defendants Niepert and McGhee, Plaintiff testified at his deposition that he told both nurses on multiple occasions that he was supposed to have medication for his serious medical illness. He further testified that both Defendants were familiar with him from prior incarceration at Menard for over five years, so even if they did not know his exact prescription or dosage, they knew enough to recognize that he was an individual with a serious mental illness who regularly took medication for his

---

[8] The Defendants argue that Plaintiff lacks verifying medical evidence that he suffered effects from the lack of medication, but the deposition transcript makes it clear that the Defendants possess records of this nature. At the deposition, the Defendants questioned Plaintiff about multiple mental health notes and records that indicate the lack of medication had an impact on him. These records would include the notes from Melissa Pappas that stated Plaintiff was not doing well. (Doc. 71-5 at 39-40). Medical records and Plaintiff's own testimony can be forms of verifying medical evidence in the absence of expert testimony. *Williams v. Liefer*, 491 F.3d 710, 715-16 (7th Cir. 2007) (sources such as medical records and plaintiff's own testimony about the impact of a delay in treatment were sufficient to overcome judgment as a matter of law in favor for a doctor).

condition. In further support that Niepert and McGhee knew about his desire for medication, Plaintiff submitted grievances from July 1, 2, and August 23, that detailed his efforts to communicate with Niepert and McGhee on an ongoing basis about his medical needs. In total, this evidence creates a genuine dispute about the Defendants' familiarity with Plaintiff's condition such that a reasonable jury could find that these individuals knew about Plaintiff's need and blatantly ignored it.

The Defendants argue that because they did not have medical authority as nurses to disburse medication without a prescription or Plaintiff's medical file, they cannot be held liable, but this argument is out of step with Seventh Circuit precedent. Nursing staff is not absolved from liability because they are unable to personally render care. *Berry*, 604 F.3d at 443 ("As an ethical matter, a nurse confronted with an 'inappropriate or questionable practice' should not simply defer to that practice, but rather has a professional obligation to the patient to 'take appropriate action[.]'" "We are not persuaded, at least as a matter of law, by [the nurse's argument that he cannot be held liable because he lacked authority to refer [plaintiff] to a dentist without further approval."). A prison nurse is still responsible for alerting superiors to an urgent need for medical care. *Reck*, 27 F.4th at 485 (if a nurse is aware of an inmate's medical problem, a delay in advising a supervisor may constitute deliberate indifference). Therefore, the Court does not find that Niepert and McGhee are entitled to summary judgment.

It is worth mentioning that although Defendants Gregson, Thompson, and Tripp have failed to answer or otherwise appear, summary judgment does not appear appropriate for them on the available record because the issues concerning their

involvement are likely identical to McGhee and Niepert. Unless Gregson, Tripp, and Thompson, have some sort of documentary evidence not already available that shows that they acted on Plaintiff's requests for care, it is doubtful they would be able to seek summary judgment on the same grounds used by Niepert and McGhee.

Turning to Defendant Butler, the Court does not find that Butler has met the burden for summary judgment on the record presented. The only evidence submitted on Butler's behalf is her responses to interrogatories wherein she stated that if a grievance was received and marked as an emergency, she would have sent it to the medical administrator. This gives no information about the grievance practices at Menard, and it provides no explanation for what happened with Plaintiff's grievances that he alleges he submitted on the first four days of his stay at Menard. Plaintiff cannot be said to lose his claim simply because no one at Menard made a record of anything that occurred to him during his stay there on a court writ. The Court finds it significant that when the Administrative Review Board investigated and reviewed Plaintiff's grievances about this issue at Menard, they concluded that his grievance should be affirmed, and that the facility failed to provide him with medication. (Doc. 71-7 at 32). Internal email correspondence about the investigation attached by Defendants in support of their summary judgment motion paints a grim picture of the handling of Plaintiff's medication issue, showing that no one could really understand what transpired and that higher level medical officials believed that what transpired was incorrect.[9] In light of this evidence,

---

[9] In response to queries by IDOC, Dr. Melvin Hinton (the Chief of Mental Health for IDOC) wrote, "If he was at Menard and received any psychotropic medications, a MAR would have been created and maintained. If no such MAR exists, then it is clear he did not receive his psychotropic medication. This

and Plaintiff's own deposition testimony and grievance documentation, the Court finds that summary judgment should not be granted on behalf of Defendant Butler.

Given the foregoing analysis, the Court finds that the Defendants are not eligible for qualified immunity. The prescribed need for medications for a diagnosed serious mental illness is an obvious need that requires really no medical expertise to appreciate. The defendants cannot conscionably argue that their duty was so unclear under the law that they should not be held responsible if it is established that they in fact knew of Plaintiff's need and did not act.

As to damages, though the Defendants are correct that compensatory damages cannot be sought absent a physical injury, the existence of a physical injury in this case is open for debate. At minimum, Plaintiff would be able to collect punitive and nominal damages for his week of discomfort and distress, so the damages issue does not foreclose relief.

Finally, turning to injunctive relief, the Court agrees with the Defendants that injunctive relief is moot at this juncture. Although the Court appreciates the point made by Plaintiff's counsel about the state of medical care available in the IDOC, the Court notes that in March of 2022, Plaintiff was released on parole. His release makes the state of medical care in the IDOC of particularly low importance to him. Accordingly, the

---

would be an error on IDOC's part. He should have received his psychotropic medications. Can you send me the dates he was on WRIT (to confirm), am I correct that someone from Pontiac marked that he received medications when he was not in the facility? If so that is a major falsification of medical documents." (Doc. 71-7 at 43). In response to a follow-up query, he wrote, "According to the MAR, there is no indication that he received medications while at Menard. In fact, his MAR from Pontiac indicates that on 6/29 & 6/30 a nurse went to his cell but he was not in the cell; clearly he was at Menard at the time. I believe he is correct that he did not receive his medications while at Menard." (Doc. 71-1 at 42).

Warden of Menard need not remain in this case, and summary judgment will be granted solely as to the issue of injunctive relief.

## DISPOSITION

In conclusion, Defendants' Motion for Summary Judgment (Doc. 65) will be **GRANTED in PART, and DENIED in PART**. The Motion is **GRANTED** only as to the Warden of Menard because the request for injunctive relief is **MOOT**. The Clerk of Court is **DIRECTED** to **TERMINATE** the Warden of Menard from this case, because the Warden was added for the sole purpose of implementing injunctive relief. By contrast, summary judgment (Doc. 65) is **DENIED** as to Defendants McGhee, Niepert, and Butler. By separate order, the Court will address the default of Defendants Gregson, Tripp, and Thompson.

**IT IS SO ORDERED.**

Dated: September 16, 2022

———————————————
DAVID W. DUGAN
United States District Judge